United States District Court
Northern District of Texas
Fort Worth Division
501 W. 10th Street,
Room 310
Fort Worth, TX 76102-3673



ZAK SHAIK,

Pro Se Plaintiff,

v.

CHARLES SCHWAB & CO., INC.,
JESSICA LAVELY,
BRANDON VANMETER, and
SCOTT COLEMAN,

Defendants.

Case No.:

**4-24CV-817-P**

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

Plaintiff Zak Shaik ("Shaik" or "Plaintiff"), appearing pro se, hereby sues Defendants Charles Schwab & Co., Inc. ("Schwab"), Jessica Lavely ("Lavely"), Brandon Vanmeter ("Vanmeter"), and Scott Coleman ("Coleman") (collectively, "Defendants"), and alleges the following:

## INTRODUCTION

1. This action arises out of Defendants' wrongful termination of Plaintiff Shaik's independent Registered Investment Advisor ("RIA") contract, unlawful interference with Plaintiff's client relationships, defamation of Plaintiff, improper retention of Plaintiff's clients' assets, and violations of federal and state laws, resulting in substantial financial and reputational harm to Plaintiff.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Zak Shaik is an individual residing in Tarrant County, TX. At all relevant times, Plaintiff was an independent RIA contracted with Defendant Schwab.

3. Defendant Charles Schwab & Co., Inc. is a California corporation with a place of business at 3000 Schwab Way, Westlake, TX 76262-8104. Schwab is a securities broker-dealer registered

with the U.S. Securities and Exchange Commission ("SEC") and is a member of the Financial Industry Regulatory Authority ("FINRA").

4. Defendant Jessica Lavely is an individual residing at 3000 Schwab Way, Westlake, TX 76262-8104, and is employed as Director, Legal Counsel, Corporate Legal Services at Charles Schwab & Co., Inc.

5. Defendant Brandon Vanmeter is an individual residing at 3000 Schwab Way, Westlake, TX 76262-8104, and is employed as Senior Manager, Advisor Services, Account Management at Charles Schwab & Co., Inc., with an office at 3000 Schwab Way, Westlake, TX 76262. His contact information is Tel: 480-589-2813, Email: Brandon.VanMeter@schwab.com.

6. Defendant Scott Coleman is an individual residing at 3000 Schwab Way, Westlake, TX 76262-8104, and is employed in the compliance department at Charles Schwab & Co., Inc.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), and 28 U.S.C. § 1367 (supplemental jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this District.

**FACTUAL ALLEGATIONS**

9. In October 2021, Plaintiff signed up with Schwab as an independent RIA firm and was assigned advisor number 0812-1499. Plaintiff began using Schwab's asset custody services and collected over $3 million in assets under management ("AUM").

10. In early 2023, John Gustafson from Schwab reached out to Plaintiff seeking details about a $37,000 fee charged to client Juan Santamaria. Plaintiff explained the nature of the fee and shared his signed advisory agreement with Gustafson, who appeared to understand the situation.

11. In October 2023, Defendant Coleman began questioning Plaintiff about the $37,000 fee paid to Plaintiff on the Santamaria account. Plaintiff again explained that the fee was for advanced tax

planning, estate planning, and financial services authorized by the client under an advisory agreement, which Plaintiff offered to provide.

12. Plaintiff's firm is a boutique full service tax planning firm that provides a multitude of services to high net worth clients. Juan Santamaria has been Plaintiff's client since March 2000, and has paid similar fees in the past for comparable services.

13. On December 1, 2023, Schwab held a termination call with Plaintiff. During this call, no specific regulations or statutes were cited as reasons for termination, but Jessica Lavely insisted the reason for termination was "regulations", without ever providing any reference to any such claims.

14. On December 4, 2023, Defendants Lavely and Vanmeter informed Plaintiff on a conference call that Schwab was terminating Plaintiff's contract due to the fees on the Santamaria account. Schwab blocked payment of Plaintiff's advisory fees and required Plaintiff to relocate all client assets by February 5, 2024.

15. Defendants cited "regulatory reasons" for the termination but refused to provide any specific securities regulations or Schwab policies that were violated, even after repeated requests by Plaintiff.

16. On the same day, December 4, 2023, Schwab sent letters to Plaintiff's clients, which informed them of the termination as if Plaintiff was an employee of Schwab and encouraged for them to keep their accounts at Schwab if they desired, while providing full customer support phone and contact information.

17. Plaintiff objected to Defendants communicating with his clients about the termination, asserting that as a mere custodian Schwab had no right or authority to do so. Defendants disregarded this objection.

18. Defendants have refused to transfer Plaintiff's client assets to Plaintiff's new custodian, despite being provided proper forms to do so since December 2023, at Equity Trust company

despite repeated requests, improperly holding the assets. This has caused Plaintiff to lose advisory fees since February 05, 2024 and continuing to this day.

19. Defendants have falsely told Plaintiff's clients that Plaintiff was fired for an illegal act. This defamation has caused several clients to stop doing business with Plaintiff, while previously having a strong rapport with Plaintiff.

20. Defendants Lavely, Vanmeter, and Coleman were directly involved in the decision to terminate Plaintiff's contract and acted with incompetence and in conspiracy with Schwab to wrongfully terminate Plaintiff without proper investigation or justification.

21. On June 4, 2024, Plaintiff sent a good faith settlement offer to Schwab, requesting a response by June 14, 2024, to avoid federal litigation.

22. On July 8, 2024, Plaintiff requested from Schwab: his signed agreement as an independent advisor, any internal/external complaints or reviews that may have triggered the termination process, and references to all regulations cited during the termination conference call.

23. On July 11, 2024, Defendant Lewis provided Plaintiff with a copy of the Investment Advisor Service Agreement signed October 14, 2021, but refused to provide any documents relating to the internal review that led to the termination.

24. Plaintiff has repeatedly expressed his willingness to resolve this matter without arbitration or litigation, but Defendants have insisted on enforcing the arbitration clause in the agreement.

25. The arbitration clause in the Investment Advisor Service Agreement (IASA) is unconscionable and unenforceable due to the unequal bargaining power between the parties and the fact that it effectively denies Plaintiff's constitutional right to a jury trial.

26. Defendants' actions constitute a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., involving multiple acts of wire fraud and interference with commerce.

27. Defendants' conduct violates the Securities Exchange Act of 1934, specifically Section 10(b) and Rule 10b-5, by engaging in manipulative and deceptive practices in connection with Plaintiff's securities business.

28. The Investment Advisor Service Agreement (IASA) between Plaintiff and Schwab is an aleatory contract, characterized by unequal risks and benefits between the parties. This unequal nature is particularly evident in the arbitration clause, which disproportionately benefits Schwab at the expense of Plaintiff's rights. Courts have recognized that such unequal bargaining power can render arbitration clauses unconscionable. See, e.g., Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010).

29. Schwab's actions, while ostensibly those of a private company, constitute state action due to the company's deeply intertwined relationship with federal regulatory bodies. Specifically:

  a) Schwab operates under extensive federal regulation, including oversight from the SEC and FINRA;
  b) Schwab performs functions traditionally exclusive to the state, such as facilitating securities transactions and safeguarding investor assets;
  c) Schwab's actions in terminating Plaintiff's contract and interfering with his client relationships were made possible by its federally granted authority as a broker-dealer.

This level of entanglement is analogous to that found in Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 (2001), where a nominally private entity's actions were deemed state action due to its "entwined" relationship with the state.

30. Defendants engaged in a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1), including but not limited to:

  a) Multiple instances of wire fraud (18 U.S.C. § 1343) in communicating false information about Plaintiff to his clients via interstate wire communications;
  b) Interference with commerce by threats or violence (18 U.S.C. § 1951) by improperly retaining client assets and blocking transfers;

c) Attempted extortion by threatening Plaintiff's business unless he complied with their unjustified demands, in violation of 18 U.S.C. § 1951.

These acts form a pattern of racketeering activity as they are related, continuous, and pose a threat of continued criminal activity, satisfying the requirements set forth in H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

## **UNCONSCIONABILITY OF THE ARBITRATION CLAUSE**

31. The arbitration clause in the IASA is unconscionable and unenforceable for the following reasons:

   a) Unequal bargaining power: Schwab, a multi-billion dollar corporation, held significantly greater bargaining power than Plaintiff, an individual investment advisor.

   b) Adhesion contract: The IASA was presented on a take-it-or-leave-it basis, with no opportunity for Plaintiff to negotiate its terms.

   c) Lack of mutuality: The clause unfairly benefits Schwab by limiting Plaintiff's legal recourse while preserving Schwab's ability to pursue legal remedies.

   d) Prohibition of class actions: The clause prevents Plaintiff from joining or initiating class actions, which is particularly unfair given the potential for Schwab to engage in similar conduct with other advisors.

   e) Excessive costs: The costs associated with FINRA arbitration can be prohibitively expensive for an individual advisor, effectively denying access to justice.

   f) Limitation on remedies: The arbitration process may limit the types of remedies available to Plaintiff, particularly equitable relief and punitive damages.

   g) Confidentiality requirements: Arbitration proceedings are typically confidential, which benefits Schwab by preventing public disclosure of potentially unethical practices.

   h) Denial of constitutional rights: The clause effectively denies Plaintiff's Seventh Amendment right to a jury trial.

32. The Federal Arbitration Act (FAA) should not apply to enforce the arbitration clause in this case because:

a) The aleatory nature of the contract renders the arbitration clause fundamentally unfair and against public policy;

b) Enforcement would prevent the effective vindication of Plaintiff's federal statutory rights, as recognized in American Express Co. v. Italian Colors Restaurant, 570 U.S. 228 (2013);

c) The clause is unconscionable under applicable state law, which remains a valid defense even under the FAA, as held in AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011).

33. The statute of limitations does not bar any of Plaintiff's claims. The alleged wrongful acts occurred within the past year, well within the limitations period for all causes of action asserted herein. Moreover, under the continuing violation doctrine, as recognized in Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), Defendants' ongoing refusal to transfer client assets and continued interference with Plaintiff's business relationships constitute continuing violations that toll the statute of limitations.

## COUNT I - BREACH OF CONTRACT

34. Plaintiff realleges and incorporates by reference paragraphs 1-33 above.

35. Plaintiff and Defendant Schwab entered into a valid and binding independent RIA contract.

36. Plaintiff performed all of his obligations under the contract.

37. Defendant Schwab breached the contract by wrongfully terminating it without proper justification or cause, failing to provide the required regulatory basis for the termination, and improperly blocking payment of Plaintiff's advisory fees.

38. Defendants' actions also breached the implied covenant of good faith and fair dealing inherent in every contract. This covenant obligated Defendants to act in good faith and deal fairly with Plaintiff, which they failed to do by arbitrarily terminating the contract and interfering with Plaintiff's business relationships.

39. As a direct and proximate result of Defendants' breach, Plaintiff has suffered actual damages including but not limited to loss of advisory fees, loss of clients, and reputational harm.

## COUNT II - TORTIOUS INTERFERENCE WITH CONTRACTS AND BUSINESS RELATIONSHIPS

40. Plaintiff realleges and incorporates by reference paragraphs 1-39 above.

41. Plaintiff had valid and enforceable contracts with his clients for advisory services, as well as ongoing business relationships with clients and prospects.

42. Defendants had knowledge of Plaintiff's client contracts and relationships.

43. Defendants engaged in intentional and unjustified interference with Plaintiff's client contracts and relationships by:

   a) Improperly communicating with clients about Plaintiff's termination despite Plaintiff's objections;
   b) Defaming Plaintiff to clients by falsely stating Plaintiff was terminated for an illegal act;
   c) Improperly retaining client assets and refusing to transfer them to Plaintiff's new custodian.

44. Defendants' interference was malicious and without justification. Defendants acted with the specific intent to harm Plaintiff's business relationships and deprive him of his livelihood.

45. As a direct and proximate result of Defendants' tortious interference, Plaintiff suffered actual damage including lost advisory fees, lost clients, and harm to his business and reputation.

## COUNT III - DEFAMATION

46. Plaintiff realleges and incorporates by reference paragraphs 1-45 above.

47. Defendants made false and defamatory statements about Plaintiff, telling clients Plaintiff was fired for an illegal act.

48. Defendants published these statements to third parties, including Plaintiff's clients.

49. The statements were defamatory per se as they imputed criminal conduct and unfitness for Plaintiff's profession.

50. Defendants acted with actual malice, knowing the statements were false or with reckless disregard for their truth. Defendants had no basis for claiming Plaintiff committed any illegal act, yet they deliberately made these false statements to harm Plaintiff's reputation and business.

51. Plaintiff suffered actual damages including lost clients, lost advisory fees, and harm to his reputation as a direct and proximate result of Defendants' defamation.

## COUNT IV - VIOLATION OF FINRA RULES AND SEC REGULATIONS

52. Plaintiff realleges and incorporates by reference paragraphs 1-51 above.

53. As an SEC-registered broker-dealer and FINRA member, Defendant Schwab is required to comply with SEC regulations and FINRA rules in dealing with RIAs and clients.

54. Defendants violated FINRA Rule 2010 requiring observance of "high standards of commercial honor and just and equitable principles of trade" by wrongfully terminating Plaintiff without cause, making false statements about the reasons, and unjustly retaining client assets.

55. Defendants violated FINRA Rule 2150 prohibiting improper use of client assets by retaining them despite proper transfer requests.

56. Defendants violated SEC Regulation S-P (17 C.F.R. § 248) by disclosing confidential client information to Plaintiff's clients without authority.

57. Defendants also violated FINRA Rule 2210 regarding communications with the public by making false and misleading statements about Plaintiff to his clients.

58. As a result of Defendants' rules violations, Plaintiff suffered actual damages to be determined at trial.

## COUNT V - VIOLATION OF LANHAM ACT

59. Plaintiff realleges and incorporates by reference paragraphs 1-58 above.

60. While the Lanham Act is typically applied in trademark cases, its false advertising provisions under 15 U.S.C. § 1125(a)(1)(B) have been interpreted broadly to cover various forms of unfair competition. See, e.g., POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102 (2014).

61. Defendants engaged in unfair competition by making false and misleading statements about Plaintiff's termination which deceived clients and resulted in lost business for Plaintiff.

62. These statements were made in commercial advertising or promotion, as they were disseminated to Plaintiff's clients with the intent to influence their investment decisions.

63. Defendants' actions have caused Plaintiff to suffer competitive and reputational harm in the marketplace for investment advisory services.

64. As a direct and proximate result of Defendants' violations of the Lanham Act, Plaintiff has suffered substantial damages.

## COUNT VI - NEGLIGENCE

65. Plaintiff realleges and incorporates by reference paragraphs 1-64 above.

66. Defendants owed Plaintiff a duty of care in investigating and making decisions about his contract termination.

67. Defendants breached their duty by failing to conduct a proper investigation, seek proof, or provide justification before terminating Plaintiff's contract.

68. As a direct and proximate result of Defendants' negligence, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT VII - CIVIL CONSPIRACY

69. Plaintiff realleges and incorporates by reference paragraphs 1-68 above.

70. Defendants engaged in a civil conspiracy to wrongfully terminate Plaintiff's contract and interfere with his business relationships.

71. Defendants had a meeting of the minds on the object or course of action, and committed one or more unlawful, overt acts in furtherance of the conspiracy.

72. As a direct and proximate result of the conspiracy, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT VIII - VIOLATION OF RICO ACT

73. Plaintiff realleges and incorporates by reference paragraphs 1-72 above.

74. Defendants engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity, including wire fraud and interference with commerce.

75. The "enterprise" consists of Schwab and its employees, including the individual defendants, who function as a continuing unit with the common purpose of retaining client assets and fees through fraudulent means.

76. The predicate acts, as detailed in paragraph 30, are related as they share similar purposes, results, participants, and methods of commission. They are continuous, having occurred repeatedly over at least a seven-month period, with a threat of future repetition.

77. As a direct and proximate result of Defendants' racketeering activities, Plaintiff has suffered substantial damages to his business and property, including lost fees and clients, satisfying the causation requirement set forth in Holmes v. Securities Investor Protection Corporation, 503 U.S. 258 (1992).

## COUNT IX - VIOLATION OF SECURITIES EXCHANGE ACT

78. Plaintiff realleges and incorporates by reference paragraphs 1-77 above.

79. Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 by engaging in manipulative and deceptive practices in connection with Plaintiff's securities business.

80. Specifically, Defendants:

   a) Made untrue statements of material fact and omitted material facts necessary to make their statements not misleading;

   b) Employed devices, schemes, and artifices to defraud;

   c) Engaged in acts, practices, and a course of business which operated as a fraud or deceit upon Plaintiff and his clients.

81. These actions were made in connection with the purchase or sale of securities, as they directly impacted Plaintiff's ability to manage his clients' securities accounts.

82. Defendants acted with scienter, as evidenced by their knowing dissemination of false information about Plaintiff to his clients and their deliberate interference with Plaintiff's business.

83. Plaintiff relied on Defendants' misrepresentations and omissions to his detriment, suffering substantial financial losses.

84. As a direct and proximate result of Defendants' violations, Plaintiff has suffered substantial damages.

## COUNT X - VIOLATION OF DUE PROCESS

85. Plaintiff realleges and incorporates by reference paragraphs 1-84 above.

86. Defendants' actions in terminating Plaintiff's contract without proper cause or procedure violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

87. Defendants' conduct constituted state action due to the extensive regulation of the securities industry and Schwab's role as a quasi-public entity in the financial markets, as detailed in paragraph 29.

88. As a result of Defendants' violation of Plaintiff's due process rights, Plaintiff has suffered damages including loss of property and liberty interests.

## COUNT XI - VIOLATION OF FIRST AMENDMENT RIGHTS

89. Plaintiff realleges and incorporates by reference paragraphs 1-88 above.

90. Defendants' actions in retaliating against Plaintiff for objecting to their conduct violated Plaintiff's First Amendment rights to free speech and to petition for redress of grievances.

91. Defendants' conduct constituted state action due to the extensive regulation of the securities industry and Schwab's role as a quasi-public entity in the financial markets, as detailed in paragraph 29.

92. As a result of Defendants' violation of Plaintiff's First Amendment rights, Plaintiff has suffered damages including loss of property and liberty interests.

## COUNT XII - DECLARATORY JUDGMENT ON ARBITRATION CLAUSE

93. Plaintiff realleges and incorporates by reference paragraphs 1-92 above.

94. An actual controversy exists between Plaintiff and Defendants regarding the enforceability of the arbitration clause in the IASA.

95. Plaintiff contends that the arbitration clause is unconscionable and unenforceable for the reasons stated in paragraphs 31-32 above.

96. Defendants contend that the arbitration clause is valid and enforceable, and have insisted on its enforcement.

97. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment that the arbitration clause in the IASA is unconscionable, unenforceable, and void as a matter of law and public policy.

98. Such a declaration is necessary and appropriate at this time to allow Plaintiff to pursue his claims in this Court and to prevent Defendants from seeking to compel arbitration.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Zak Shaik respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

a) Actual and compensatory damages in an amount to be determined at trial, but no less than $10,000,000;

b) Punitive damages in an amount to be determined at trial, but no less than $30,000,000;

c) Treble damages under RICO;

d) Disgorgement of Defendants' ill-gotten gains;

e) Plaintiff's costs and attorney's fees;

f) Injunctive relief ordering transfer of Plaintiff's client assets to his new custodian;

g) A declaration that Defendants' actions were unlawful;

h) Pre- and post-judgment interest;

i) An order requiring preservation of all investigative reports, correspondence, and list of parties involved in the termination decision;

j) An order expediting discovery to obtain evidence from Defendants regarding the termination decision;

k) A declaratory judgment that the arbitration clause in the Investment Advisor Service Agreement is unconscionable, unenforceable, and void; and

l) Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: August 21, 2024

Respectfully submitted,

ZAK SHAIK

Zak Shaik
Pro Se Plaintiff

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: August 21, 2024

*ZAK SHAIK*

Zak Shaik Pro Se Plaintiff
300 E.South St
Unit 391
Arlington, TX 76004
(469)702-8955
zia@myarpp.com

JS 44 (Rev. 08/18)                                   CIVIL COVER SHEET                          4-24CV-817-P

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**RECEIVED AUG 27 2024 — CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS**

## I. (a) PLAINTIFFS
ZAK SHAIK - Pro Se

**DEFENDANTS**
Charles Schwab & Co., Inc., Jessica Lavely, Brandon Vanmeter, and Scott Coleman

**(b)** County of Residence of First Listed Plaintiff: Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*
Robyn C Crowther    rcrowther@Steptoe.com
Steptoe LLP
633 West Fifth St Ste 1900 Los Angeles, CA 90071

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|                                | PTF | DEF |                                              | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State          | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State       | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury – Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | [x] 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331 - Federal Question.

Brief description of cause:
Plaintiff alleges violations of Securities Exchange Act, RICO Act, Lanham Act, and constitutional rights.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- **DEMAND $** 40,000,000.00
- CHECK YES only if demanded in complaint: **JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE: 08/21/2024
SIGNATURE OF ATTORNEY OF RECORD: ZAK SHAIK

**FOR OFFICE USE ONLY**
RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____

