IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ZAK SHAIK, | § | |
|     *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL NO. 4:24-CV-0817-P |
| | § | |
| CHARLES SCHWAB & CO., | § | |
| INC., et al., | § | |
|     *Defendants.* | § | |

**FINDINGS, CONCLUSION, AND RECOMMENDATION REGARDING
DEFENDANTS' MOTION TO COMPEL ARBITRATION AND
PLAINTIFF'S MOTION FOR SANCTIONS**

Pending before the Court are two motions: (1) a Motion to Compel Arbitration ("Mot. to Compel Arb.") [ECF No. 8] filed by Defendants Charles Schwab & Co., Inc., Jessica Lavely, Brandon Vanmeter, and Scott Coleman (collectively "Schwab") on November 18, 2024, and (2) an Opposition to Defendants' Motion to Compel Arbitration and Cross-Motion for Sanctions ("Pl.'s Response") [ECF No. 11] filed by Plaintiff Zak Shaik ("Shaik") on November 21, 2024. Having carefully considered the motions, response, and reply, the Court **RECOMMENDS** that Schwab's Motion to Compel Arbitration be **GRANTED** and Shaik's Cross-Motion for Sanctions be **DENIED**.

## I.    RELEVANT BACKGROUND

On October 14, 2021, Shaik entered into an Investment Advisor Service Agreement ("IASA") with Schwab.  (Plaintiff's Complaint ("Pl.'s Compl.") at 2; Mot. to Compel Arb. at 7.) The IASA, which was signed by Shaik, governed the parties' business relationship[1] for two years.

---

[1] The Court interprets the parties business relationship based on what they refer to as "custody asset services" to be akin to that of an employment relationship.  (Mot. to Compel Arb. at 7.)

(Pl.'s Response at 5.)  On December 4, 2023, Schwab terminated Shaik citing "regulatory reasons." (*Id.*)

Subsequently, on August 27, 2024, Shaik filed this action.  (ECF No. 1.)  In his complaint, Shaik alleges the following causes of action: (1) Breach of Contract; (2) Tortious Interference with Contracts and Business Relationships; (3) Defamation; (4) Violation of FINRA Rules and SEC Regulations; (5) Violation of Lanham Act; (6) Negligence; (7) Civil Conspiracy; (8) Violation of RICO Act; (9) Violation of Securities Exchange Act; (10) Violation of Due Process; (11) Violation of First Amendment Rights; and (12) Declaratory Judgment on Arbitration Clause.  (Pl.'s Compl. at 7-13.)  Shaik also alleges that, while the IASA contains an arbitration clause, the clause itself is unconscionable and unenforceable.[2]  (Pl.'s Compl. at 7.)

The IASA contains the following relevant provisions: a predispute arbitration clause and an Arbitration Agreement (collectively the "arbitration provisions").  The predispute arbitration clause[3] states that:

> **This Agreement contains a predispute arbitration clause.  By signing an arbitration agreement, the parties agree as follows:**
>
> - **All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
>
> - **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

---

[2] In his complaint, Shaik asserts that the arbitration clause is unconscionable and unenforceable for the following reasons: (1) unequal bargaining power; (2) adhesion contract; (3) lack of mutuality; (4) prohibition of class actions; (5) excessive costs; (6) limitation on remedies; (7) confidentiality requirements; and (8) denial of constitutional rights.  (Pl.'s Compl. at 6.)  To the extent these arguments are not raised in Shaik's Response, the Court does not consider them as a basis for invalidating the Arbitration Agreement as the Court's analysis is limited to Schwab's Motion to Compel Arbitration, the response, and the reply.  This limited review is similar to that of a court resolving a motion to dismiss.  *See, e.g., Collins v. Midland Mortg.*, No. 4:22-CV-02414, 2022 WL 16556810, at *2 (S.D. Tex. Oct. 31, 2022) (a motion to dismiss limits a court's review to certain documents).

[3] The predispute arbitration clause is located within the "Required Arbitration Disclosures" section within the IASA.  (Mot. to Compel Arb., Exhibit 1 at 4) (emphasis omitted).

- **The ability of parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings.**

(Mot. to Compel Arb., Exhibit 1 at 4 (emphasis in original).)

The Arbitration Agreement provides that:

> You [Zak Shaik] agree that any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab, or the breach of any such agreements, instructions, or authorizations; (ii) any or all accounts you maintain or serve as Investment Advisor for at Schwab . . . , any other Schwab account services; and (iii) transactions in any such account or in any way arising from your relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents, or services provides . . . , including any controversy over the arbitrability of a dispute, will be settled by arbitration.

(*Id.*)

The Arbitration Agreement further provides that it shall "apply even if . . . the relationship contemplated by this Agreement is not entered into and will survive the closure of any account you maintain or serve as Investment Advisor for at Schwab and/or the termination of services rendered under this Agreement." (*Id.*)  On November 18, 2024, Schwab filed the Motion to Compel Arbitration.  (ECF No. 8.)

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the Arbitration Agreement between the parties.  (*See* Mot. to Compel Arb., Exhibit 1 at 4.)  "The FAA reflects the fundamental principle that arbitration is a matter of contract."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 2776 (2010).  As such, the FAA provides that arbitration provisions in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.S. § 2.  Under the FAA, a party is permitted "to file a motion to compel arbitration based on the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration."  *Engebretson v. Randolph-Brooks Federal Credit Union*, No.

1:23-CV-1002-RP, 2024 WL 2871317, at *1 (W.D. Tex. May 21, 2024) (quoting FAA, 9 U.S.C.S. § 4). The FAA has been interpreted to establish a strong presumption in favor of arbitration. *See Coleman v. Qwest Commc'ns Corp.*, No. Civ.A. 3:02CV2428-P, 2003 WL 22388482, at *1 (N.D. Tex. Sept. 30, 2003) (noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (internal citations omitted); *see also Dosch v. Grubbs Auto. GRA, LLC*, No. 4:23-cv-01202-P, 2024 WL 2819524, at *1 (N.D. Tex. June 3, 2024) (finding the presumption in favor of arbitration "baked into the very fabric of the Federal Arbitration Act."). This presumption is reflected in the very terms of the FAA, which "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C.S. §§ 3, 4).

The Fifth Circuit has set forth "a two-step analysis for adjudicating a motion to compel arbitration." *Herod v. DMS Sols. Inc.*, No. 4:23-cv-04465, 2024 WL 4881439, at *3 (S.D. Tex. Nov. 25, 2024); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). "The first is contract formation—whether the parties entered into *any arbitration agreement at all.* The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Production Servs.*, 830 F.3d 199, 201 (5th Cir. 2016). Both steps are generally questions for the court; however, "if a party asserts that an arbitration agreement contains a delegation clause, the court only asks (1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause." *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016). In line with the strong presumption in favor of arbitration, "if there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202. While a party seeking

to compel arbitration bears the initial burden of demonstrating that a valid arbitration agreement in fact exists, the burden shifts to the nonmovant in the face of a valid agreement "to establish a defense to enforcement (e.g., unconscionability, duress, fraudulent inducement, revocation)." *Rodgers-Glass v. Conroe Hospital Corp.*, No. H-14-3300, 2015 WL 4190598, at *8 (S.D. Tex. July 10, 2015); *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004) (noting that "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity"); *see also Ashley v. Clay County*, No. 5:23-CV-013-C, 2023 WL 9161936, at *1 (N.D. Tex. Dec. 4, 2023) (finding "the burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid, or, at a minimum, to allege the dispute is outside of the agreement's scope") (internal citations omitted).

### III.    DISCUSSION

In its motion, Schwab contends that "the Court should compel [the] dispute to arbitration because all of Plaintiff's claims in the Complaint are subject to a valid arbitration agreement between the parties." (Mot. to Compel Arb. at 1.)  Specifically, Schwab argues this dispute is covered by the valid Arbitration Agreement found in the IASA, which Shaik has admitted to signing.  (*Id.* at 2.)  In contrast, Shaik argues[4] the following in his response and cross-motion for

---

[4] Shaik, in his response, sets forth various arguments to support his stance that this action should not be compelled to arbitration and that sanctions are warranted.  (*see* Pl.'s Response at 6-11.)  However, the Court, in reviewing his response, finds it difficult to follow his arguments as they are set forth in the form of an outline with various lists containing 2–3-word bullet points, which are often vague and ambiguous in themselves.  Shaik fails to clarify or even support his arguments by citing to facts, evidence, the record, or even case law.  While the Court attempts to make sense of Shaik's arguments, the Court only considers those arguments which clearly fit within the limited analysis as described above.  If Shaik felt his arguments had merit, he should have provided them with support to aid the Court's analysis.  After all, "[j]udges are not like pigs, hunting for truffles buried in the record."  *United States v. Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (internal citations omitted); *see Ramirez v. Killian*, No. 2:18-CV-107-Z-BR, 2022 WL 4677629, at *4 n.4 (N.D. Tex. Sept. 30, 2022) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 n.7 (5th Cir. 1992)) ("It is not this Court's duty to 'sift through the record in search of evidence to support a party's position'"); *see also Estate of Brown v. Morrison*, No. 1:18cv277-HSO-JCG, 2019 WL 3720053, at *3 (S.D. Miss. Aug. 7, 2019) (finding "it is not the Court's responsibility to sift through the [record] or to make [a party's] arguments for them.").  Thus, the Court will not address any of Shaik's arguments that it construes as vague or those which do not clearly fit within the Court's limited analysis here.

sanctions: 1) the court must determine arbitrability, 2) the arbitration agreement is unconscionable and unenforceable, 3) Defendants' conduct renders arbitration impossible, 4) the FAA does not require enforcement,[5] and 4) sanctions are warranted.  (Pl.'s Response at 6-10.)  Faced with a motion to compel arbitration, we limit our discussion to the two-step analysis set forth above.

## A. <u>Valid Arbitration Agreement</u>

As set forth above, the first step in evaluating Defendants' Motion to Compel Arbitration is for the Court to determine whether the parties entered into an arbitration agreement at all.  In determining the enforceability of an arbitration agreement, courts apply the contract law of the state which governs the agreement.  *Alim v. KBR, Inc.*, 570 Fed. Appx. 417, 420 (5th Cir. 2014).  In this case, California law governs the arbitration agreement.  (*See* Mot. to Compel Arb., Exhibit 1 at 5, 6.)  Under California law, the essential elements of a contract are "1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration."  Cal.

---

[5] The Court notes that one of Shaik's arguments for why the FAA does not require enforcement is because "FAA Exceptions Apply."  (Pl.'s Response at 9.)  One exception relied on by Shaik is the "Fundamental Fairness Exception."  (*Id.*)  Shaik fails to set forth any case law or provide an explanation for why this "exception" applies beyond stating: "Impossibility of fair process," "Ongoing misconduct," "Coercive tactics," and "Public policy violations."  The Court is unable to ascertain the basis for why he believes this "exception" applies and further is unable to find case law to explain what the exception even pertains to and its applicability in this context.  Therefore, the Court will not address this argument.  Shaik further alleges "Statutory Rights Protection" based on "Securities law violations" and "FIRNA rule breaches," "Constitutional rights," and "Access to courts."  (*Id.*)  As Shaik fails to set forth any specific arguments or evidence to support or explain the alleged securities law violations and FIRNA rule breaches and how they affect the Arbitration Agreement's validity, the Court will not address these arguments.  An additional argument that Shaik sets forth relating to "FAA Exceptions" are "Statutory Rights Protection" grounded in "Constitutional rights" and "Access to courts."  (Pl.'s Response at 9.)  While Shaik fails to support his arguments by citing to specific constitutional rights which provide him protection from enforcing the FAA, the Court, nonetheless, will evaluate his right to a jury trial, as identified by Schwab.  (Mot. to Compel Arb. at 17.)  "A jury trial waiver is inherent in arbitration agreements."  *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1037 (N.D. Ca. July 1, 2022); *see also Madden v. Kaiser Foundation Hospitals*, 552 P.2d 1178, 1180 (Cal. Aug. 10, 2976) (finding that individuals "entering into arbitration agreements know and intend that disputes arising under such agreements will be resolved by arbitration, not by juries").  The Court notes that arbitration agreements may be found unconscionable if they require parties "to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed by law."  *Dougherty v. Roseville Heritage Partners*, 260 Cal. Rptr. 3d 580, 591 (Cal. Ct. App. Mar. 30, 2020).  However, this principle is not relevant here as the jury waiver is found in the predispute arbitration provision, which is "specifically authorized by statute."  *Grafton Partners v. Superior Ct.*, 116 P.3d 479, 484 (Cal. Aug. 4, 2005).  When Shaik signed and assented to the Arbitration Agreement, he waived his right to a jury trial.  Therefore, Shaik's waiver of his right to a jury trial is not sufficient, in itself, to invalidate the arbitration agreement.

Civ. Code. § 1550. Furthermore, in applying the ordinary state-law principles which govern the formation of contracts, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656 (1996); *Olson v. World Financial Grp. Ins. Agency, LLC*, No. 24-cv-00477-EJD, 2024 WL 3498243, at *5 (N.D. Ca. July 19, 2024); *Oakberry SD UTC, LLC v. Oakberry Acai, Inc.*, No. 23cv1883-BEN (MSB), 2024 WL 3463651, at *1 (S.D. Ca. July 18, 2024). "The party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Here, both parties consented to enter into a contract (the IASA), which contained the arbitration provisions. (Mot. to Compel Arb. at 7; Pl.'s Response at 5.) This is evidenced by Shaik's signature on the IASA as well as his own admission. (Pl.'s Response at 5; Mot. to Compel Arb., Exhibit 1 at 6.) Further, the contract was for a lawful object, i.e. asset custodial services. (Pl.'s Response at 5.) However, Shaik sets forth the following four arguments disputing contract formation: 1) lack of mutual assent, 2) failure of consideration, 3) adhesion contract, and 4) unconscionability. (Pl.'s Response at 9-10.) While Shaik fails to provide support or context for his arguments, the Court will address these arguments below.[6]

---

[6] The Court notes that Shaik's Response contains various arguments that contain short lists of words without citing any factual basis to support those arguments. For example, in arguing that "FAA Exceptions Apply" his argument is shaped as follows:

    B. State Law Defenses Remain Valid
      1. Contract Formation Issues
      - Lack of mutual assent
      - Failure of consideration
      - Adhesion contract
      - Unconscionability

(Pl.'s Response at 9-10.)

### 1.    Lack of Mutual Assent

"Under California law, mutual assent is a required element of contract formation."
*Knutson*, 771 F.3d at 565. "Mutual assent may be manifested by written or spoken words, or by
conduct, and acceptance of contract terms may be implied through action or inaction." *Id.*
(internal citations and quotations omitted); *see White v. Conduent Commer. Sols., LLC*, No. 1:23-
cv-00113 JLT CDB, 2024 WL 4373851, at *10 (finding that even clicking a button can indicate
assent to an agreement). Signing an agreement can indicate assent to an agreement, even if the
individual "neither reads it nor considers the legal consequences of signing it." *White,* 2024 WL
4373851, at *10 (quoting *Operating Engineers Pension Trust v. Gillman*, 737 F.2d 1501, 1504
(9th Cir. 1984)); *see Brooks v. Greystar Est. Partners, LLC*, No. 23cv1729-LL-VET, 2024 WL
3489205, at *4 (S.D. Ca. July 19, 2024) (finding a valid arbitration agreement where Plaintiff's
electronic signature on the lease constituted assent to the lease in its entirety, which included the
arbitration provision contained in an attached addenda). The test for mutual assent is "whether a
reasonable person would believe that an offeree has assented to an agreement based on [the
offeree's] outward manifestations of consent." *Rangle v. Experian Info. Sols., Inc.*, No. 1:24-cv-
00642-JLT-CDB, 2024 WL 4203361, at *3 (E.D. Ca. Sept. 16, 2024). Regardless of outward
manifestations of consent, an individual "is not bound by inconspicuous contractual provisions of
which he was unaware, contained in a document whose contractual nature is not obvious."
*Knutson*, 771 F.3d at 566.

Here, Shaik provides no support for his argument that there was a lack of mutual assent to
the arbitration agreement. However, he does acknowledge signing the IASA, which contained the
arbitration provisions. (Pl.'s Response at 5.) Further, the IASA is signed by Shaik twice. (Mot.
to Compel Arb., Exhibit 1 at 6.) A reasonable person looking at Shaik's signatures on the IASA

would believe that Shaik had assented to the agreement, which contained the arbitration provision. Furthermore, the arbitration provisions do not appear to be inconspicuous as both have bold font headers[7] and are contained within the agreement itself rather than in a separate document. Therefore, in assenting to the IASA, the Court finds that Shaik also assented to the arbitration provisions. *Brooks*, 2024 WL 3489205, at *4.

### 2.    Failure of Consideration

Consideration is also an essential element of a contract under California law.  Cal. Civ. Code. § 1550.  "A written instrument is presumptive evidence of consideration, and in any event all the law requires for sufficient consideration is the proverbial 'peppercorn.'"[8]  *Robbins v. Checkr, Inc.*, No. 19-cv-05717-JST, 2020 WL 4435139, at *3 (N.D. Ca. July 30, 2020) (internal citations omitted).  The Ninth Circuit has further found, the "promise to be bound by the arbitration process itself serves as adequate consideration."  *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).  In *Gold*, the court found that mutual promises between an employee and employer, when entering an employment agreement, to be bound by arbitration and to forego a judicial forum for any disputes constituted adequate consideration.  *See Gold v. Illumina, Inc.*, No. 22-cv-05036-JST, 2023 WL 4830126, at *2 (N.D. Ca. July 27, 2023).   Here, Schwab and Shaik

---

[7] The headers of the arbitration provisions appear in the IASA as follows:

**14. Required Arbitration Disclosures**

**15. Arbitration Agreement**

(Mot. to Compel Arb., Exhibit 1 at 4.)

[8] "The Ninth Circuit has made clear that any inquiry into the adequacy of consideration is limited, noting that 'the first lesson in contracts is the peppercorn theory—that courts will not inquire into the adequacy of consideration, so long as it is true and valuable.'" *Juarez v. Social Fin., Inc.*, No. 20-cv-03386-HSG, 2021 WL 1375868, at *4 (N.D. Ca. Apr. 12, 2021) (quoting *Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir. 1988)).

both promised to be bound by arbitration and to forego a judicial forum for such disputes.[9] Therefore, there is adequate consideration to support the agreement.

Based on the foregoing, the Court finds and concludes that Schwab has satisfied its burden of establishing the existence of a valid arbitration agreement. The Court must now determine if Shaik carries his burden of establishing a defense to the enforcement of the Arbitration Agreement.

### 3. Adhesion Contracts and Unconscionability

The contract defense of "unconscionability has both a procedural and a substantive element." *Garcia v. Start Yoshi, Inc.*, No. 23-cv-06518-VKD, 2024 WL 2274524, at *2 (N.D. Ca. May 17, 2024) (internal citations omitted). Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power [and substantive unconscionability focuses] on overly harsh or one-sided results." *Id.* Courts applying California law may refuse to enforce an arbitration provision when it is both procedurally and substantively unconscionable. *Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004, 1012 (N.D. Ca. Feb. 23, 2024). While "a contract [provision] must be both procedurally and substantively unconscionable to be rendered invalid, . . . courts utilize a sliding scale to determine unconscionability—greater substantive unconscionability may compensate for lesser procedural unconscionability." *Id.* at *6 (internal citations omitted); *see Wheeler v. LG Elecs. USA, Inc.*, No. 1:22-cv-00459-NODJ-BAM, 2024 WL 51353, at *12 (E.D. Ca. Jan. 4, 2024) (noting that while both procedural and substantive unconscionability must be present, they "need not be present in the same degree"). In California, "unconscionability requires a substantial degree of unfairness *beyond a simply old-fashioned bad bargain*." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (internal citations

---

[9] The IASA between Schwab and Shaik provides: "All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." (Mot. to Compel Arb., Exhibit 1 at 4.)

and quotations omitted).  "The unconscionability doctrine ensures that contracts . . . do not impose terms that have been variously described as 'overly harsh,' 'unduly oppressive,' so one-sided as to shock the conscience,' or 'unfairly one-sided.'" *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748 (Cal. Aug. 3, 2015) (internal citations and quotations omitted).  The party asserting unconscionability as a contract defense bears the burden of proof.  *Id.* at 749.  The Court now turns to whether Shaik has met that burden here, beginning with the question of procedural unconscionability.

i.     <u>Procedural Unconscionability</u>

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013); *see Wheeler*, 2024 WL 51353, at *12 (finding that a procedural unconscionability analysis involves asking "whether there was oppression or surprise during formation such that closer scrutiny of a contract's fairness is required.").  Oppression is measured by "the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Chavarria*, 733 F.3d at 922 (quoting *A&M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 122 (Cal. Ct. App. Aug. 27, 1982)).  In contrast, surprise is measured by "the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.* (internal citations omitted); *see Longboy*, 718 F. Supp. 3d at 1012.

a.     Oppression

Under California law, "oppression may be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251,

1260 (9th Cir. 2017) (internal citations and quotations omitted). An adhesion contract "is a standardized contract offered by the party with superior bargaining power on a take-it or leave-it basis." *White*, 2024 WL 4373851, at *12 (internal citations and quotations omitted). Employment contracts that contain arbitration agreements imposed as a condition of employment are typically adhesive. *Id.* Further, adhesion contracts offered on a take-it or leave-it basis are not automatically unenforceable as unconscionable. *See Serafin v. Balco Properties Ltd., LLC*, 185 Cal. Rptr. 3d 151, 161 (Cal. Ct. App. March 16, 2015) (finding "that the requirement to enter into an arbitration agreement is not a bar to its enforcement"); *see also Lagatree v. Luce, Forward, Hamilton & Scripps*, 88 Cal. Rptr. 2d 664, 680 (Cal. Ct. App. Sept. 13, 1999) ("a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' bases") (finding employees who sign such an agreement will be compelled to submit their employment-related disputes to arbitration). The Ninth Circuit has found that, "in the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high." *Poublon*, 846 F.3d at 1261 (citations and quotations omitted).

Shaik alleges that the Arbitration Agreement is procedurally unconscionable because of the unequal bargaining power between the parties. (Pl.'s Response at 7.) Shaik argues the unequal bargaining power derives from: (1) Schwab's dominant market position; (2) no meaningful alternatives to custodial services; (3) take-it or leave-it contract terms; and (4) no negotiation opportunity.[10] (*Id.*) As it relates to take-it or leave-it contract terms and no opportunity to

---

[10] The Court notes that while Shaik alleges there was unequal bargaining power between the parties because of Schwab's dominant market position and a lack of meaningful alternatives for custodial services, he fails to explain what either of these vague assertions mean or how they support a finding of procedural unconscionability. Therefore, the Court will not consider them in its procedural unconscionability analysis.

negotiate, in this case, there is no dispute that the IASA is an adhesion contract as Shaik was required to sign it as a condition of his employment and it does not appear, based on the record, that he was permitted the opportunity to negotiate the IASA's terms. Nonetheless, Schwab argues the adhesive nature of a contract itself is not enough to indicate procedural unconscionability. (Mot. to Compel Arb. at 12.)   This Court agrees that the adhesive nature of the arbitration provisions and the IASA does not in itself indicate a high degree of procedural unconscionability. Thus, the Court now considers whether there is additional evidence of oppression or surprise to warrant finding a substantial degree of procedural unconscionability.

> To establish other evidence of oppression, some circumstances courts consider are:
>
> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*OTO, L.L.C. v. Kho*, 447 P.3d 680, 690-91 (Cal. Aug. 29, 2019).  In this case, Shaik provides no evidence that Schwab exerted pressure on him, denied him sufficient time to review the contract, or deprived him of the opportunity to review the IASA with an attorney.  Furthermore, as it relates to the education and experience of the party, Shaik self-identifies as having "operated a successful investment advisory practice serving high-net-worth clients for over two decades. [And unlike] typical investment advisors . . . , [he] provided comprehensive services including advanced tax planning and estate planning services."  (Pl.'s Response at 5.)  While Schwab may have had greater bargaining power as the employer,[11] Shaik is far from inexperienced from

---

[11] Under California law, the disparity of bargaining power between the parties alone is insufficient for a finding of procedural unconscionability.  *See Stacy v. Brinker Restaurant Corp.*, No. 1:12-cv-00851-LJO-BAM, 2012 WL 5186975, at *15 (E.D. Ca. Oct. 16, 2012) (where the minimal degree of procedural unconscionability was due to the take-it or leave-it nature of the employment agreement and did not stem from the fact the Defendant was "a series of national corporations with stronger bargaining power than [the] Plaintiff."); *see also Ulbrich v. Overstock.com, Inc.,* 887 F. Supp. 2d 924, 932 (finding that "[s]imply observing that [Plaintiff] is one person and [Defendant] is a large corporation [as it relates to bargaining power,] does not tip the balance toward finding procedural

dealings of this nature as he has been practicing for over two decades. Thus, Shaik's experience weighs against a finding of oppression.

Additionally, the length of the IASA as well as the length and complexity of the challenged arbitration provisions weighs against a finding of oppression. Shaik alleges the arbitration provisions are procedurally unconscionable because of hidden and oppressive terms that contain complex legal terminology, buried provisions, multiple cross-references, and unclear consequences. (Pl.'s Response at 7.) However, the Court fails to see how the six-page IASA with arbitration provisions spanning two of those six pages amounts to procedural unconscionability. The provisions themselves are not buried within the six-page document as they are the same font-size as the surrounding language, contain bold headers, and prominently span from page 2 to page 3 of the document. Additionally, both arbitration provisions begin with, and contain throughout, plain language stating:

**14. Required Arbitration Disclosures** (the predispute arbitration provision)

This Agreement contains a predispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:

- All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

**15. Arbitration Agreement**

You agree that any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, . . . (ii) any or all accounts you maintain or serve as Investment Advisor for Schwab . . . and (iii) transactions in any such account or in any way arising from your relationship with Schwab . . . , including any controversy over the arbitrability of a dispute, will be settled by arbitration.

(Mot. to Compel Arb., Exhibit 1 at 4 (emphasis in original).)

---

unconscionability.") Thus, Shaik's argument for procedural unconscionability based on unequal bargaining power between the parties alone and without further evidence or support, fails.

Shaik fails to cite to any specific portion of the arbitration provisions which would tend to lend support to his hidden and oppressive terms argument beyond his bare and vague assertions that there is complex legal terminology, buried provisions, multiple cross-references, and unclear consequences.  In reviewing the provisions, the Court itself fails to see how the length or complexity of the provisions gives rise to finding a substantial degree of procedural unconscionability.  Overall, while the Court finds that, while there is some oppression with the IASA being an adhesion contract, the oppression is minimal.  *Longboy*, 718 F. Supp. 3d at 1014; *see Poublon*, 846 F.3d at 1261-62 (finding that "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most.").  The Court shall now determine whether evidence of "surprise" warrants a finding of greater procedural unconscionability.

b.    Surprise

As explained above, surprise is measured by "the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party."  *Chavarria*, 733 F.3d at 922.  Thus, surprise may exist where "the allegedly unconscionable provision is hidden within a prolix printed form."  *Longboy*, 718 F. Supp. 3d at 1014 (internal citation omitted).  However, the drafting party "is under no obligation to highlight the arbitration clause of its contract, nor is it requires to specifically call that clause to a counter-party's attention."  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021); *see Brooks*, 2024 WL 3489205, at *6 (where the court found no surprise where the "Arbitration Agreement was titled as such in bold capitalized type and was easily identifiable within the [overall document].").

Here, the placement and structure of the arbitration provisions within the IASA cannot be interpreted to amount to the "surprise" contemplated for procedural unconscionability.  The two

arbitration provisions, found within the IASA itself, span from page 3 to page 4 and can be easily identified by bold type headings that reference "Arbitration." Further, the language utilized does not appear to be so complex as to amount to surprise. Different portions of the provisions are also bolded, which starkly separates them from surrounding provisions, and which is only done in one other provision within the IASA that is not related to arbitration. While Shaik mentions "buried provisions" and "complex legal terminology," among other things, he fails to provide any basis or support for such arguments. As the basis is not apparent and in light of the structure of these provisions, the Court finds a lack of "surprise."

Given the lack of surprise and the minimal oppression, there is only minimal procedural unconscionability.[12] Therefore, the Court shall now determine whether the degree of substantive unconscionability is high enough to warrant a finding of unconscionability.

ii.     Substantive Unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms." *Wheeler*, 2024 WL 51353, at *12 (citations omitted). It requires more than "simply an old-fashioned bad bargain," rather, a party must show terms which *unreasonably* favor the more powerful party. *Longboy*, 718 F. Supp. 3d at 1015 (citations omitted). To assess substantive unconscionability, courts focus on whether the terms are one-sided. "'overly-harsh,' 'unduly burdensome,' 'unreasonably favorable,' or . . . 'shock the conscience.'" *Id.* (citing *Poublon*, 84 F.3d at 1261). However, "not all one-sided contract provisions are unconscionable." *Sanchez*, 353 P.3d at 749; *see Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Development (US), LLC*, 282

---

[12] The Court notes that Shaik additionally alleges the arbitration provisions are procedurally unconscionable because of a lack of meaningful choice citing to an industry concentration, limited custodial options, market power imbalance, and economic coercion. (Pl.'s Response at 7.) While the Court takes note of Shaik's argument it is unable to ascertain why Shaik believes these factors, if true, would support a finding of procedural unconscionability. Shaik does not cite to any facts, evidence, or even case law which would support or even explain his argument. As it is unclear what Shaik is arguing or how it relates to a procedural unconscionability analysis, the Court will not address this argument.

P.3d 1217, 1232 (Cal. Aug. 16, 2012) (noting that "[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit.").

Here, Shaik alleges substantive unconscionability based on one-sided benefits and his financial ability[13] to pursue his claims. In the employment context, an arbitration agreement may be substantively unconscionable where it "lacks basic fairness and mutuality [because] it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrences." *Serafin*, 185 Cal. Rptr. 3d at 162-63 (internal citations omitted); *see also Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 984 (Cal. Feb. 27, 2003) (finding substantive unconscionability in the employment context where "an employee's claims against an employer, but not the employer's claims against the employee, are subject to arbitration") (citations omitted); *see Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 694 (Cal. Aug. 24, 2000) abrogated in part by *AT7T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (finding that an employer must have a reasonable justification for the one-sided terms in an arbitration agreement, that is, "a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum," in order for such an agreement to be not found unconscionable."). However, where an "arbitration agreement sets forth that 'any and all' disputes between parties will be arbitration, courts have found the agreement be fully mutual in scope." *Serafin*, 185 Cal. Rptr. 3d at 163.

---

[13] Shaik raises a practical impossibility argument to support his stance that the arbitration provisions are substantively unconscionable. (Pl.'s Response at ). While the brunt of that argument focuses on his financial ability to pursue his claims, he also alleges practical impossibility based on "ongoing harm during process" and "irreparable damage to business." (*Id.*) However, neither of these arguments relate to the terms of the Arbitration Agreement itself which is the focus of a substantive unconscionability analysis. Further, Shaik fails to set forth any argument or case law that would assist the Court in recognizing how either basis serves to support his argument of practical impossibility or even substantive unconscionability. Therefore, the Court will not address these arguments beyond his financial ability to pursue his claims.

In this case, while Shaik alleges that Schwab retains court remedies, the terms of the Arbitration Agreement and predispute arbitration clause provide otherwise. At the outset, the predispute arbitration clause provides that "[a]ll parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury." (Mot. to Compel Arb., Exhibit 1 at 4.) This language clearly states that both parties give up the right to sue each other in court. It does not, contrary to Shaik's assertion, preserve Schwab's ability utilize other court remedies beyond arbitration. Furthermore, as set forth above, the language of the Arbitration Agreement, which provides that "any controversy or claim arising out of or relating to" the IASA will be compelled to arbitration, highlights the mutual obligation of both parties to arbitrate. On their face, the arbitration provisions do not provide Schwab with any court remedies that are denied to Shaik. Rather, in reviewing these provisions, it is evident that they mandate both parties use arbitration as the proper forum to pursue any claims that may arise from their dealings. Further, Shaik fails to provide any support for his bare assertion that Schwab retains court remedies. Therefore, the Court finds no substantive unconscionability for one-sided benefits based on lack of mutuality.

Shaik further alleges that the Arbitration Agreement is substantively unconscionable due to "one-sided benefits" based on confidentiality benefits to Schwab, the Court notes that the Arbitration Agreement does not have a confidentiality clause. However, even if it did, "[a] confidentiality clause, however, does not, render [an] entire agreement substantively unconscionable." *Borgarding v. JPMorgan Chase Bank*, No. CV 16-2485 FMO (RAOx), 2016 WL 89-4413, at *9 (C.D. Ca. Oct. 31, 2016); *see also Sanchez v. Carmax Auto Superstores California, LLC*, 168 Cal. Rptr. 3d 473, 482 (Cal. Ct. App. Feb. 6, 2014) (noting that confidentiality provisions are not unreasonable and are not substantively unconscionable). Since the Arbitration Agreement would not be found substantively unconscionable even

if it did contain a confidentiality clause, the Court finds Shaik's argument based on confidentiality benefits to be without merit.

As to the issue of substantive unconscionability based on limited discovery, "[a]lthough parties may agree to something *less than* the full panoply of discovery, employees are at least entitled to discovery sufficient to adequately arbitrate their statutory claim." *Villanueva v. Maxim Healthcare Servs.*, No. 23-v-03403-JSC, 2023 WL 5917403, at *4 (N.D. Ca. Sept. 11, 2023); *see Ruiz v. Conduent Commer. Sols., LLC*, No. 1:21-CV-1555 JLT CDB, 2023 WL 3379300, at *10 (E.D. Ca. May 11, 2023) (finding that [c]ertain limitations on discovery in the arbitration process is an appropriate method of streamlining the arbitration process—the full panoply of judicial discovery is not required."). However, "arbitration agreements that unduly limit discovery are substantively unconscionable." *Ruiz*, 2023 WL 3379300, at *5. To make a determination of whether a limitation on discovery is unconscionable, "courts must balance [the] desirable simplicity of discovery limits with [an] employees' need for discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review." *Garcia*, 2024 WL 2274524, at *6 (internal citations and quotations omitted). Nonetheless, "[a]s long as the limited discovery procedures adequately allow a plaintiff to vindicate her rights, the limited discovery is not unconscionable." *See Ruiz*, 2023 WL 3379300, at *11 (finding Plaintiff failed to show that the discovery provisions were substantively unconscionable where she failed to explain how the discovery provisions are inadequate for her to vindicate her claims); *see also Poublon*, 846 F.3d at 1271 (finding Plaintiff failed to make any showing that she would be unable to vindicate her rights under the limited discovery procedures since she would be permitted to "obtain additional discovery merely by showing good cause, which would include a demonstrated need for discovery sufficient to adequately arbitrate her claim."); *Carmax*, 168 Cal. Rptr. 3d at 479.

In this case, the predispute arbitration clause states that "[t]he ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings." (Mot. to Compel Arb. at 61.) While it appears from this that discovery may be limited in arbitration, such a provision does not single out either party. Instead, it indicates that any limitations on discovery would apply to both parties. Furthermore, Shaik sets forth no argument to show that any limitation on discovery at all would diminish his ability to vindicate his rights. As there is no other provision which limits discovery, the Court is unable to see how this provision, which purports to inform both parties that discovery in the arbitration forum is more limited, is substantively unconscionable.

Shaik's final argument that the Arbitration Agreement is substantively unconscionable revolves around the cost of arbitration, specifically the prohibitive costs for individuals and his financial inability to pursue claims. (Pl.'s Response at 8.) Generally, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear *any type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 6 P.3d at 687. Furthermore, a party seeking to invalidate an arbitration agreement because arbitration is prohibitively expensive must make a detailed showing of the likely costs. *Crisher v. United States Bank N.A.*, No. 2:23-cv-02963-SB-PVC, 2023 WL 9223221, at *3 (C.D. Ca. Aug. 22, 2023); *see Oakberry SD UTC LLC*, 2024 WL 3463651, at *6 (finding Plaintiff's argument of lacking resources to afford arbitration unpersuasive where Plaintiff failed to show "how the potential costs of arbitration are higher than the costs of litigating the case in federal court"); *see also Longboy*, 718 F. Supp. at 1017 (finding no substantive unconscionability where Plaintiff failed to show that

arbitration would be prohibitively expensive or that it required him to pay different fees or higher fees than would be required in court).

In this case, Shaik sets forth no argument or support as to how the cost of arbitration would be prohibitive for individuals. The Arbitration Agreement simply provides that "[e]ach party shall bear its own attorney's fees and arbitration costs." (Mot. to Compel Arb. at 61.) As Shaik fails to meet his burden of showing that the cost of arbitration is prohibitively expensive the Court finds and concludes that there is no substantive unconscionability.

Because the Court finds minimal procedural unconscionability and no substantive unconscionability, the Court finds and concludes that the Arbitration Agreement is not unconscionable. Therefore, there is a valid Arbitration Agreement between the parties. The Court must next determine whether the Arbitration Agreement encompasses the dispute at issue.

## B.    Valid Delegation Clause

The question of whether an arbitration agreement covers a dispute "can be expressly delegated to the arbitrator through a delegation clause." *Topolewski v. Experian Data Corp.*, No. 2:23-cv-01976-MEMF-E, 2024 WL 3509779, at *3 (C.D. Ca. June 11, 2024). However, the parties must clearly and unmistakably indicate that they are delegating the issue of arbitrability to the arbitrator. *Lim*, 8 F.4th at 999-1000; *see Steward v. Kemper Corp.*, No. 5:23-cv-02312-SSS-SPx, 2024 WL 3467800, at *2 (finding "the parties clearly and unmistakably delegated [the issue of arbitrability] to the arbitrator by agreeing that 'arbitration shall resolve all disputes regarding the propriety of the demand for arbitration.'"). "When a delegation provision exists, a court must first inquire into whether the delegation provision is itself unconscionable." *Steward*, 2024 WL 3467800, at *2 (citations omitted). A party challenging the delegation provision must specifically

reference the provision and make arguments challenging it. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023).

In this case, the parties clearly and unmistakenly delegated the issue of arbitrability to the arbitrator by agreeing that "any controversy or claim arising out of or relating to" the IASA or the parties relationship "including any controversy over the arbitrability of a dispute, will be settled by arbitration." (Mot. to Compel Arb., Exhibit 1 at 4.) Shaik, however, argues that the delegation clause is unconscionable and unenforceable because: (1) it was obtained through the same unequal bargaining power as the broader agreement; (2) it cannot be severed from the unconscionable arbitration provision; (3) it would produce absurd results given Defendants' ongoing misconduct;[14] and (4) it violates public policy by allowing the stronger party to manipulate the forum.[15] (Pl.'s Response at 7.) As discussed above, the Arbitration Agreement is not unconscionable, therefore Shaik's second argument is without merit. However, the Court shall address his first argument below.

California law requires a showing of *both* procedural and substantive unconscionability before an arbitration agreement and any of its provisions may be found unconscionable. *Longboy*, 718 F. Supp. 3d at 1012. As stated above, while procedural unconscionability focuses on oppression or surprise due to the unequal bargaining power of the parties, substantive unconscionability focuses on the terms of the agreement itself to determine if the terms are overly

---

[14] As this Court's inquiry is limited to the validity of the delegation clause it will not make any determinations regarding what Shaik perceives to be the "Defendants' ongoing misconduct."

[15] The Court notes that Shaik alleges the delegation clause violates public policy by allowing the stronger party to manipulate the forum, yet he fails to set forth any case law or facts to support this argument. To the contrary, the FAA has been interpreted as "embodying a national policy favoring arbitration and a liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). Therefore, the Court finds his argument that the delegation clause is unenforceable because it is contrary to public policy to be without merit.

harsh or one-sided.  *Garcia*, 2024 WL 2274524, at *2.  Additionally, the party asserting unconscionability as a defense bears the burden of proof.  *Sanchez*, 353 P.3d at 748.

In this case, Shaik asserts the delegation provision is unconscionable because it was obtained through the same unequal bargaining power as the broader agreement.  (Pl.'s Response at 7.)  As stated above, any procedural unconscionability that stemmed from the "unequal bargaining power" derived from the fact that the IASA was an adhesion contract.  Nonetheless, because there was a lack of evidence of oppression or surprise associated with the Arbitration Agreement, the fact that it was part of an adhesion contract gave rise to only a minimal amount of procedural unconscionability.  Even here the delegation provision cannot be said to have surprised Shaik as it is not hidden and appears plainly at the end of the first paragraph which explains the types of disputes subject to arbitration.  However, because the delegation clause is found to be in an adhesion contract the Court affords it, faced with no additional evidence of surprise or oppression, minimal procedural unconscionability.  As Shaik does not set forth any argument that the delegation provision is substantively unconscionable, he fails to carry his burden of proving unconscionability.  Therefore, the Court finds and concludes that the delegation clause is valid and the parties should resolve their dispute in arbitration.

## IV.    DISMISSAL OR STAY THE PROCEEDINGS

Schwab, in their Motion to Compel Arbitration, asks this Court to stay this action pending arbitration.  (Mot. to Compel Arb. at 18.)  In applying the FAA, where "a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does *not* have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."  *Smith v. Spizzirri*, 601 U.S. 472, 475-76, 144 S. Ct. 1173, 1176 (2024).  Consequently, as the Court has determined that the action shall be compelled to arbitration, the

Court finds and concludes that the case should be **STAYED** while the arbitration proceedings are pending.

## V.    SANCTIONS

In his Cross-Motion for Sanctions, Shaik alleges that "Defendants' counsel has engaged in sanctionable conduct by explicitly threatening a pro se litigant with attorneys' fees to coerce arbitration."[16] (Pl.'s Response at 4.) Shaik further alleges that such "conduct violates both ethical obligations and established precedent protecting pro se litigants from intimidation tactics." (*Id.*) In response, Schwab alleges that the "purported 'threat' by Defendants' counsel is counsel's good faith attempt to confer on the Motion as required by the Local Rules and to explain to Shaik that Schwab would seek attorneys' fees under the terms of the IASA if forced to file the Motion." (Defendants Reply in Further Support of their Motion to Compel Arbitration and Response to Plaintiff's Cross-Motion for Sanctions ("Schwab Reply") at 9.) Furthermore, Schwab argues that, even if Shaik's Cross-Motion for Sanctions did have merit, the Cross-Motion is procedurally defective as Shaik failed to comply with Rule 11 by not serving the motion on Schwab twenty-one days before he filed it with the Court. (*Id.* at 9-10.)

The Court notes that, the conduct complained of by Shaik in his Cross-Motion for Sanctions is not tied directly to the Arbitration Agreement or the IASA, but rather it relates to Schwab's attempts to enforce the IASA in its entirety. In reviewing the record, the Court does not believe Schwab's conduct rises to the level of sanctionable conduct. In fact, in reviewing the IASA, and specifically the "Indemnification" section, it appears that Schwab would be entitled to

---

[16] The Court notes that Shaik sets forth different lists containing 2–3-word bullet points of what it construes to be different bases for his argument that sanctions are warranted. (*See* Pl.'s Response at 10-11.) Generally, "a party must develop its arguments with citations to law and record evidence." *Paez v. Wal-Mart Stores Texas, LLC*, 2022 WL 3216343, at *1 (W.D. Tex. Aug. 9, 2022). In this case, these lists are not accompanied by fact or citations of law. As some of the words are vague, the Court shall not consider them as a basis for his argument. Instead, the Court will only consider those words which lend support to his initial argument that sanctions are warranted based on the alleged threatening of attorneys' fees.

attorneys' fees for any action filed by Shaik or for any breach of the IASA. Therefore, the purported "threat" of attorneys' fees is not improper. Thus, the Court finds and concludes that Shaik's Cross-Motion for Sanctions should be **DENIED**.

## C. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Schwab's Motion to Compel Arbitration [ECF No. 8] be **GRANTED** and the case be **STAYED** pending the arbitration. The Court further **RECOMMENDS** that Plaintiff's Cross-Motion for Sanctions [ECF No. 11] be **DENIED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**<u>ORDER</u>**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 7**, **2025** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 24, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE